Points Decided.

(No. 4650. October 17, 1927.)

WESLEY ANDREWS, Respondent, v. ROBERT DO-
HERTY AIKENS and NELLIE AIKENS, Ap-
pellants.

[260 Pac. 423.]

Specific Performance — Wills — Valid Contract — Obligations of
Same — Management and Care of Property — No Devise for
Services.

1. While a will is ordinarily revocable, yet if it is made
pursuant to valid contract, testator cannot by revocation escape
obligation of his contract, but restitution must be made to the
other contracting by compensation in damages if pecuniary com-
pensation can be had, and specific performance will only be
decreed in the absence of a remedy at law.

2. To permit a decree of specific performance of contract
to devise, in consideration of performance of services, the ser-
vices must be of such a character that their value cannot be
estimated by a pecuniary standard.

3. Services such as an ordinary real estate agent or factor
could and does perform for a client, merely handling a farm and
various properties, receiving and disbursing money, and in gen-
eral acting as business advisor and assistant in respect thereto,
are not such as to warrant specific performance of contract to
make devise to compensate therefor.

APPEAL from the District Court of the Seventh Judicial
District, for Washington County. Hon. B. S. Varian,
Judge.

Publisher's Note.

1. See 28 R. C. L., Wills, sec. 7.

3. Agreements to make will and mode of enforcement, see notes
in 66 Am. Dec. 784; Ann. Cas. 1914A, 399; Ann. Cas. 1918A, 1191.
Specific performance of contract to leave property in consideration
of services or support, see note in 44 L. R. A., N. S., 733. See, also,
28 R. C. L., Wills, sec. 9.

See Specific Performance, 36 Cyc., p. 736, n. 52.
Wills, 40 Cyc., p. 1069, n. 10.

Action for specific performance of contract to devise real estate. Judgment for plaintiff. *Reversed and remanded.*

George Donart, Wm. M. Morgan and E. B. Smith, for Appellants.

The existence of an oral contract to devise land must be proved by testimony of disinterested witnesses. (40 Cyc. 1063; *Hamlin v. Stevens,* 177 N. Y. 39, 69 N. E. 118; *Hanly v. Hanly,* 105 App. Div. 335, 93 N. Y. Supp. 864; *In re Peterson,* 76 Neb. 652, 107 N. W. 993, 111 N. W. 361; *Reilly v. Burkelman,* 149 App. Div. 548, 134 N. Y. Supp. 13; *Rosseau v. Rouss,* 180 N. Y. 116, 72 N. E. 916.)

Specific performance of an oral contract to devise lands in consideration of services rendered will not be decreed unless the plaintiff has taken possession of the land or his services were of such a nature that their value cannot be estimated and compensated for in money, nor where the plaintiff has an adequate legal remedy. (*Hoyt v. Thomas,* 58 Cal. App. 14, 207 Pac. 1038; *Mathews v. Tobias,* 101 Or. 605, 201 Pac. 199; *Grindling v. Rehyl,* 149 Mich. 641, 113 N. W. 290, 16 L. R. A., N. S., 466; *Morrison v. Land,* 169 Cal. 580, 147 Pac. 259; *Zellner v. Wassman,* 184 Cal. 80, 193 Pac. 84; *Swedish Evangelical Free Church v. Benson,* 77 Colo. 370, 237 Pac. 165; *Russell v. Sharp,* 192 Mo. 270, 111 Am. St. 496, 91 S. W. 134; *Hayden v. Collins,* 1 Cal. App. 259, 81 Pac. 1120; *Owens v. McNally,* 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369; *Whitman v. Dittman,* 154 Minn. 346, 191 N. W. 821.)

Ordinary personal or professional services, such as services of an agent in looking after, caring for and leasing property, are not of such a nature that their value cannot be readily determined and compensated for in money. (*Zellner v. Wassman, supra; Hoyt v. Thomas, supra; Mathews v. Tobias, supra; Olson v. Dixon,* 165 Minn. 124, 205 N. W. 955.)

In case of breach of contract to bequeath or devise specific property the measure of damages is the value of the prop-

erty, and that being readily ascertainable suit for specific performance cannot be maintained. (40 Cyc. 1073; *Morrison v. Land, supra; Zellner v. Wassman, supra; Christin v. Clark,* 36 Cal. App. 714, 173 Pac. 109; *Flood v. Templeton,* 148 Cal. 374, 83 Pac. 148.)

Where the services rendered were of a much more personal nature than those rendered by the respondent, it was held that they could be adequately compensated for in money and for that reason specific performance of a contract to devise real estate was denied. (*Hoyt v. Thomas, supra; Olson v. Dixon, supra.*)

James Harris, for Respondent.

The general rule is that a valid contract to devise land must be proved by clear, satisfactory and convincing evidence. (*Bedal v. Johnson,* 37 Ida. 359, 218 Pac. 641, and cases cited; 1 Moore on Facts, 152; vol. 2, p. 1291; vol. 3, p. 1304.)

While it is prerequisite to the specific enforcement of an oral contract to devise land that both its existence and its terms be proved by clear and convincing evidence, the clearness and convincing force of the evidence is a question primarily for the trial court, and if the trial court finds on substantial evidence, or on conflicting evidence, that the contract was made and is definite and certain, such finding of fact will not be disturbed. (*Bedal v. Johnson, supra,* and cases cited; *Schoonover v. Schoonover,* 86 Kan. 487, 121 Pac. 485, 38 L. R. A., N. S., 752.)

It is said that an oral contract for the conveyance of real estate can only be proved by clear and satisfactory evidence; but whether the evidence is of that character, where it has substantial probative force, is for the trial court to determine. (*Panhandle Lumber Co. v. Rancour,* 24 Ida. 603, 135 Pac. 558; *Woodell v. Albrecht,* 80 Kan. 736, 104 Pac. 559.)

A witness, having no pecuniary interest, is disinterested. (*Morgan v. Johnson,* 87 Ga. 382, 13 S. E. 710; *Sayre v. Woodyard,* 66 W. Va. 288, 66 S. E. 320; *Fogal v. Page,*

59 Hun, 625, 13 N. Y. Supp. 656; *Brown v. Sutton,* 129' U. S. 238, 9 Sup. Ct. 273, 32 L. ed. 664.)

Since the contract has been fully performed, the best evidence of its terms is what was done under it—the construction placed upon it by the parties themselves. (6 R. C. L., p. 853, sec. 241; *Mitau v. Roddan,* 149 Cal. 1, 84 Pac. 145, 6 L. R. A., N. S., 275, 281; *Livingston Oil Corp. v. Waggoner* (Tex. Civ. App.), 273 S. W. 904; 13 C. J. 542, sec. 514.)

In specific performance, possession is not essential unless made so by the contract. (*Aldrich v. Aldrich,* 287 Ill. 213, 122 N. E. 472, subd. 9; *Gladville v. McDole,* 247 Ill. 34, 93 N. E. 86.)

Possession is not necessary where the services are rendered under the contract of such nature as to be difficult to determine their value; and to relegate claimant to his action of damages would perpetrate fraud under the protection of the statute of frauds, and to avoid which specific performance is granted. (*Teske v. Dittberner,* 70 Neb. 544, 113 Am. St. 802, 98 N. W. 57; *Svanburg v. Fosseen,* 75 Minn. 350, 74 Am. St. 490, 78 N. W. 4, 43 L. R. A. 427; *Schoonover v. Schoonover, supra; Wooley v. Stewart,* 222 N. Y. 347, 118 N. E. 847.)

Possession is not necessary where money is not the standard of value, and the value of the services is land or article, especially if the services extend over a long period of time and relying on which no book accounts of the time expended or value thereof was kept. (*Schoonover v. Schoonover, supra; Faxton v. Faxon,* 28 Mich. 159.)

That the land and services may be equal value or near such "is no ground for refusing specific performance." (*Bradford v. Smith,* 123 Iowa, 41, 98 N. W. 377, subd. 3.)

"The essential elements of a *bona fide* purchaser of land are: (1) The payment of a valuable consideration, (2) good faith and absence of purpose to take an unfair advantage of third persons; and (3) absence of notice, actual or constructive of outstanding rights of others. Three elements must

concur or the defense will be unavailing.'' (39 Cyc. 1687, and p. 1688.)

Said contracts are binding as against the heirs, devisees and purchasers with notice, or without consideration. (*Kastell v. Hillman*, 53 N. J. Eq. 49, 30 Atl. 535; *Teske v. Dittberner, supra*.)

ADAIR, Commissioner.—This action was instituted by respondent against appellants, its object being to impress a certain tract of land with a trust for the purpose of carrying out an agreement of Robert C. Aikens to will the land to respondent in consideration of and compensation for certain services rendered by the latter to the former.

The essential facts involved are as follows: Robert C. Aikens, a bachelor, was about the age of 77 years in June, 1914. He was at that time, and for long prior thereto had been, the owner and in the possession of the land in controversy and other property. He had become bodily infirm and physically unfit to farm, or properly care for his property and business. Besides an 80-acre farm near Weiser, Idaho, he owned some residential properties at Baker, Oregon, which he rented. Respondent, his nephew, resided at Baker, and was engaged in a wholesale and retail mercantile business there. Aikens reposed the utmost confidence in the business ability and integrity of respondent, and cherished real love and affection for him. On June 12, 1914, Aikens executed and published a will, wherein, among other legacies with which we are not concerned, he devised one forty of his Idaho ranch to respondent. On or about July 4, 1914, thereafter, he delivered this will to respondent for safe-keeping, and at this particular time made an oral agreement that this land was to be devised to respondent in consideration of respondent managing his uncle's business and attending to all the details thereof. This was to be in full compensation for services theretofore rendered and to be thereafter rendered for said Aikens during the remainder of his life. These duties, it was mutually agreed, were to consist of renting the properties, collecting rents, paying taxes,

44 Idaho—51

keeping buildings insured and in repair, making settlements with tenants, paying over profits and returns to Aikens, and the doing of all other things connected with and incident to the proper management of these various properties. The agreement did not contemplate the furnishing of board, lodging or medical attention, but was confined to the management of the business affairs of the uncle. This final agreement was the culmination of an intention often previously expressed by Aikens, that he intended to devise this land to respondent in payment of similar services rendered during the past and those which were to be rendered in the future.

Relying upon this contract, and never at any time having received any remuneration, the respondent continued to perform these duties up to the time of the death of Aikens. The uncle lived, at various times, in Idaho, Oregon and California, portions of the time with the mother of respondent, and for short intervals even in the home of respondent. While residing with respondent, Aikens always paid for his board at a stipulated price per week. The will remained in the custody of respondent for years, but eventually was taken from the custody of respondent by Aikens, and has never since been produced, although a copy thereof was used at the trial to prove its contents.

Some time in the fall of 1923, Aikens left Baker, Oregon, he then being approximately 87 years old, going to Boise, to the home of one Robert Doherty Aikens, one of the appellants who was a grandnephew, where he remained until his death. On December 29, 1923, in violation of his agreement with respondent, by warranty deed he conveyed this identical 40-acre tract to appellant, and made and published a new will, by one of the clauses of which he bequeathed to respondent the sum of $1,000 in lieu of the 40 acres devised to respondent under the first will.

On January 15, 1924, Robert C. Aikens died, leaving an estate free from debt or encumbrance, aggregating approximately $20,000. The 40 acres in question was worth about $6,000. When the last will was admitted to probate, re-

spondent renounced the legacy of $1,000, and brought this suit, in one cause of action of which he asks for specific performance of the contract made with him as aforesaid, and in the other cause of action he asks that the deed dated December 29, 1923, given by deceased to appellant, be canceled and held for naught. The appellants, in their answer, among other things deny the contract above mentioned, and deny all the material allegations of the second cause of action, and by way of cross-complaint seek to quiet their title to said land against the claim of respondent. This appeal is from the decree entered for respondent.

In view of what we conceive to be the law, it will be futile to pass upon many of the assignments of error urged by appellants. It is seriously contended that the alleged contract to devise the 40 acres to respondent was not sufficiently established by the testimony of disinterested witnesses. It is unquestionably the law that the proof of such a contract must be clear, cogent and convincing, and that the making of such an agreement must be established by disinterested witnesses. In this case, there was the testimony of various disinterested witnesses as to statements made to them by the deceased that respondent was to get this property, and that deceased had willed it to respondent. A will was actually executed devising it to respondent, and he rendered services without compensation for many years; and in fact all the circumstances tend to corroborate respondent's testimony to the effect that such a contract was in fact made. There is no evidence even tending to negative the existence of such a contract, although the corroboration by the disinterested witnesses is not as positive and clear as it possibly might be as to all the terms of the contract.

"The rule requiring a plaintiff seeking reformation of a contract or a specific performance to establish his case by clear and satisfactory evidence is a rule by which the trial court is to weigh and consider the evidence, and unless that rule has been substantially departed from by the trial court in arriving at his decision, the appellate court will not dis-

turb the findings and judgment." (*Panhandle Lumber Co. v. Rancour,* 24 Ida. 603, 135 Pac. 558.)

Again, in *Bedal v. Johnson,* 37 Ida. 359, 218 Pac. 641, this court held that the rule that the terms and existence of the contract must be proven by clear and convincing evidence, is one primarily for the trial court, and if the court finds on substantial or conflicting evidence that such rule has been complied with, its findings will not be disturbed on appeal. For the purposes of this opinion, we will therefore concede and hold that the contract set forth in the complaint was in fact made, and that it was a fair one, and that it was carried out in all its terms by the respondent.

[1] The paramount issue in this case is whether or not this particular contract should be specifically enforced by the court. A will is ordinarily ambulatory and revocable at any time before the testator's death, and this is so although delivered to the person beneficially interested. However, where a will has been made pursuant to a valid contract, the testator cannot by revocation escape the obligations of his contract. Restitution must be made to the other contracting party by compensation in damages for the breach of the contract if pecuniary compensation can be had, and specific performance will only be decreed in the absence of a remedy at law.

[2] Performance of services of such a character that their value cannot be estimated by a pecuniary standard is required to permit a decree of specific performance. There seems to be entire harmony in the authorities on this proposition, and we will only cite a few stating this rule: *Owens v. McNally,* 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369; *Hayden v. Collins,* 1 Cal. App. 259, 81 Pac. 1120; *Morrison v. Land,* 169 Cal. 580, 147 Pac. 259; *Christin v. Clark,* 36 Cal. App. 714, 173 Pac. 109; *Zellner v. Wassman,* 184 Cal. 80, 193 Pac. 84; *Hoyt v. Thomas,* 58 Cal. App. 14, 207 Pac. 1038; *Swedish Evangelical Free Church v. Benson,* 77 Colo. 370, 237 Pac. 165; *Schoonover v. Schoonover,* 86 Kan. 487, 121 Pac. 485, 38 L. R. A., N. S., 752; *Whitman v. Dittman,* 154 Minn. 346, 191 N. W. 821; *Olsen v. Dixon,* 165 Minn.

124, 205 N. W. 955; *Mathews v. Tobias,* 101 Or. 605, 201 Pac. 199.

In the case of *White v. Smith,* 43 Ida. 354, 253 Pac. 849, this court recently said that " . . . . While the services performed in the home by respondent in the way of household duties might possibly have been compensated in money, those things that respondent gave up and the value of respondent living with the deceased as his child are impossible of measurement in money value, and the respondent cannot be placed *in statu quo.* The only way possible of compensating respondent is by specific performance of the contract . . . . , and the court did not err in decreeing specific performance of the contract."

In *Morrison v. Land, supra,* it was held:

"As specific performance of a contract will be granted only where the legal remedy is inadequate, specific performance of a contract to make a money bequest by a will in consideration of plaintiff's continuing to act as assistant manager of deceased's hotel cannot be had; for the legal action for damages affords complete relief."

In *Whitman v. Dittman, supra,* the court said: "If the consideration be labor and services which may be estimated and liquidated in money, so as reasonably to make the promisee whole, the case is not taken out of the statute,"— and in that case specific performance was denied.

The well-settled rule, therefore, is that an oral agreement to devise real estate will be specifically enforced in equity, without reference to the statute of frauds, and regardless of the question whether or not the promisee has been in possession of the property, where the latter has fully complied with the contract and compensation for such services cannot be computed in an action at law; and hence to deny relief in equity by specific performance would result in the perpetration of a fraud on the promisee.

[3] In practically all the cases where specific performance was decreed the contracts called for the performance of duties of a filial and intimate personal nature, the value of which could not be estimated. This, of course, presents

an entirely different question, and such authorities are not in point in this case. Here the deceased or promisor was not to live in the family of the respondent, and no close, intimate or filial relationship was to exist. The contract simply required respondent to look after the business of the deceased. He was to handle the farms and various properties, receive and disburse moneys, and in general act as the business advisor and assistant of the owner. He was required to render no service that an ordinary real estate agent or factor could not and does not perform for his clients. This was not a contract for the personal care of an aged person, where great patience with his infirmities was required, contemplating not only food, medicine and clothing, but good temper, forbearance, and honest effort to please, and an intimate family relationship; but was simply a business arrangement for the management and care of the property of the deceased.

Had this contract never been entered into, could respondent recover fully for his services? Could deceased have taken the management and control of the property away from respondent at any time after making this agreement? Suppose Aikens had lived, could not respondent have sued for and recovered the value of his services? Certainly he would have had a remedy at law under such circumstances. Why, then, has he not a remedy at law for the breach of the contract involved in this action?

In the case of *Hoyt v. Thomas, supra,* the plaintiff contracted to take care of and manage the business of deceased, and also to render such aid and assistance as was in his power during any illness. The court conceded that the contract was fair, and said:

"We are unable to perceive anything unusual or out of the ordinary in the character of the services which plaintiff agreed to perform for deceased, or why, upon proper proof, they could not be adequately compensated for in money. In character they are such as are of every-day occurrence and usually performed upon an express or implied contract for an agreed or implied pecuniary compensation. Hence, since

it appears that no relation of a filial or like personal character was created or contemplated by the contract due to and incidental to which plaintiff discharged duties the nature of which made it impossible to estimate their value, but, on the contrary, the services called for thereby, if rendered, were susceptible of measurement and plaintiff compensated in money on account of the breach thereof, specific performance should not be decreed. The fact that plaintiff kept no memoranda and is unable, as he says, to testify as to the time devoted by him in rendering the services, or value thereof, is immaterial. His is the misfortune suffered by any plaintiff who performs services which may be measured in money and is unable to produce evidence of such value, but it furnishes no reason for equitable jurisdiction."

In the instant case, the contract did not even require respondent to render aid or assistance in case of sickness, and otherwise was very similar, in all essentials, to that involved in the last-quoted decision.

This particular farm had no peculiar or special value to the respondent, it being 40 acres of land under cultivation, fenced, and had irrigation works appurtenant, but was without buildings. Its location was of no great or special value. It was not possessed of any peculiar sentimental or ancestral value, or *pretium affectionis*. He had made no improvements thereon, and had never even been in the actual possession or occupation thereof, except as agent for his uncle.

There is nothing inherently difficult or uncertain in establishing the value of the services rendered under this contract. When a testator, having contracted to devise real estate, afterward conveys the same to another, the court should not decree specific performance unless some imperative reason exists, such as where it is impossible to compensate in money. There is far greater danger, by the establishment of a precedent of decreeing specific performance under circumstances such as those disclosed here, of making possible a fraud on the aged and the weak, and those related to such persons, than of perhaps slight injustice to one who claims against the estate of such persons, where

as here ample compensation may be awarded the person performing such services. By proper claim, timely presented, followed by suit if necessary, this respondent could recover on *quantum meruit* against the estate, and should not be decreed specific performance.

It is immaterial in this case whether there was an adequate consideration for the execution of the deed to appellant, or whether the deceased had the mental capacity to execute the deed and last will, or whether he was induced thereto by improper or undue influence, since this case hinges solely on the question of respondent's remedy for the breach of this contract. Respondent is not otherwise interested in the estate, there being ample assets therein, exclusive of this 40 acres, to fully pay any claim he may be able to establish as a creditor of the estate.

For the reasons stated, I recommend that the judgment of the lower court be reversed and that the cause be remanded, with directions to enter judgment dismissing respondent's action, and to enter decree for appellants quieting title as prayed for in the cross-complaint.

Babcock and Featherstone, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is reversed and the cause remanded, with directions to enter judgment dismissing respondent's action, and to enter decree for appellants quieting title as prayed for in the cross-complaint. Costs to appellants.

Wm. E. Lee, C. J., and Givens, Taylor and T. Bailey Lee, JJ., concur.