BLACKWELL v. KEYS.

1. APPEAL AND ERROR—CHANCERY CASES—HEARING DE NOVO—FIND-
   INGS OF FACT.
   The Supreme Court hears chancery cases *de novo* but gives great
   weight to the findings of fact of the trial judge who heard the
   witnesses.

2. SPECIFIC PERFORMANCE—ORAL CONTRACTS—EVIDENCE.
   Evidence presented in suit for specific performance of an alleged
   oral contract on part of deceased testatrix to leave property
   to plaintiff and his late wife in exchange for services per-
   taining to the property *held*, insufficient to establish a definite
   and binding agreement, although consistent with good inten-
   tions on the part of decedent toward plaintiff and his wife,.
   the proffered testimony concerning an attempt to reduce the
   claimed contract to writing that was rejected by decedent
   tending to weaken the plaintiff's case.

3. CONTRACTS—LEAVING PROPERTY BY WILL.
   Oral contracts to leave a promisor's property to another upon
   death of the promisor must be scrutinized closely and with
   great caution.

4. SPECIFIC PERFORMANCE—DISCRETION OF COURT.
   Specific performance of an oral contract to leave property to
   another by will is not a matter of course but rests in the
   sound judgment and discretion of the court under all the
   circumstances of each particular case; such discretion not
   being arbitrary and capricious but regulated by well-settled
   principles.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 912.
[2] 57 Am Jur, Wills § 185.
[3, 4, 8] 57 Am Jur, Wills § 192.
[3, 5] 57 Am Jur, Wills § 197.
[5] 57 Am Jur, Wills §§ 202, 205..
[6] 57 Am Jur, Wills § 193.

.5. SAME—ORAL CONTRACTS—PART PERFORMANCE.

An oral contract to leave property to another by will, sought to be specifically enforced, must be mutual, the tie reciprocal, certain in all essential particulars and there must be acts of part performance unequivocally referring to and resulting from the agreement.

'6. SAME—CONTRACT TO CONVEY PROPERTY BY WILL—ADEQUACY OF REMEDY AT LAW.

Specific performance of a contract to execute a will in consideration of services rendered will be decreed only in the absence of a remedy at law, and will be denied if pecuniary compensation can be had for the breach.

'7. SAME—CONTRACT TO CONVEY PROPERTY BY WILL—RELATIONSHIP OF PARTIES.

Specific performance of an oral contract to devise real estate in consideration of services rendered will not be enforced, where the services consisted merely of looking after the business of the promisor without any close, intimate, or filial relationship existing between the parties, and the property has no peculiar sentimental or ancestral value to the promisee, who has made no improvements upon it.

8. EVIDENCE—SPECIFIC PERFORMANCE—CONTRACT TO CONVEY PROPERTY BY WILL.

To warrant specific performance of an oral contract to devise real estate in consideration of services rendered, the proof must be clear, cogent, and convincing, and the testimony must be that of disinterested witnesses.

Appeal from Wayne; Murphy (George B.), J. Submitted June 6, 1958. (Docket No. 39, Calendar No. 46,897.) Decided July 15, 1958.

Bill by Fred Blackwell, individually and as special administrator of the estate of Louise Blackwell, deceased, against Hyman Keys, administrator of the estate of Mary Holms, deceased, Robert McBrady, William Bell, II, as administrator of the estate of Albert S. Taylor, deceased, and Nippie Adams, for specific performance of oral agreement to devise real estate. Bill dismissed. Plaintiff appeals. Affirmed.

*Dann, Rosenbaum & Bloom,* for plaintiff.

*Sidney K. Meyer,* for defendants Keys and Mc-Brady.

*Loomis, Jones & Colden,* for defendants Bell and Adams.

EDWARDS, J. This is an appeal from a dismissal of a bill of complaint in Wayne circuit court. The circuit judge, sitting in chancery, heard testimony upon plaintiff's pleadings which sought specific performance of a claimed oral agreement by a deceased person to leave all her property to. 2 people not related to her in exchange for certain services pertaining to her property.

The deceased was one Mary Holms who died in 1951 leaving a considerable amount of rental property. She left a will by which defendants McBrady and Adams, and Albert S. Taylor (decedent's brother, now deceased and represented herein by the administrator of his estate) were left the property which is the subject of this suit. The will has been admitted to probate and is not contested.

Plaintiff in his own right, and as administrator of his wife's estate, claims an oral agreement by which in 1931, and afterwards, Mrs. Holms promised to will all of her property to Mr. and Mrs. Blackwell in exchange for their services to her, principally in the form of property management and maintenance.

The testimony offered to prove this oral agreement came from plaintiff and 5 witnesses. Typical of their testimony was that of Zimmie Hariston:

"Blackwell fixed up her properties. He worked for the city but when she would need him over there, she would call. He did plumbing and carpentry work for her, like fixing faucets. He moved furniture

here and there, and did painting and decorating for her. I saw these things myself. * * * From the very first time I saw Mrs. Holms, in '41 when I was introduced to her, she told me, 'These are my children. They really work for me and they get everything when I die.' That is what she told me about the Blackwells. I have heard her say a number of times that the Blackwells were as close to her as children."

This witness also testified to an attempt to put this claimed agreement in writing when she, as a notary public, drafted an agreement. This agreement was never signed by decedent and the witness indicated that it had been lost.

The 2 questions presented by this appeal are:

(1) At the close of plaintiff's proofs, had plaintiff presented prima facie evidence of the contract claimed?

(2) If so, was such an oral contract enforceable under the statute of frauds?

The chancellor who heard the testimony answered these questions in the negative—in definite terms as to the first, and by implication as to the second.

As to the contract, his opinion in dismissing the bill reads:

"The testimony put in on behalf of plaintiff was rather nebulous. I have no doubt that some things were done by the Blackwells towards doing work or performing certain services on behalf of Mary Holms during her lifetime, but I cannot see, for the life of me, any contract to pay for these services by conveyance, by will or otherwise, of this property. In fact, I do not know where the property is, nor the description. * * *

"I am not hesitant to say in a case of this type that the plaintiff has taken on a rather heavy burden. The plaintiffs are relying on a contract which was never at any time reduced in writing. They are not

mentioned in the will that was probated on behalf of the deceased. The terms of plaintiffs' alleged contract are far from satisfactory. I would say that it is elementary that courts cannot make contracts between parties. All a court can do is to interpret the contract that is already made.

"What was the contract made between the plaintiffs and Mary Holms? I do not know. Where do you find it? In the record as made, in the testimony adduced, I do not see it there.

"I believe that the case in 69 ALR, referred to by counsel for defendants is right in principle, if not on the facts. It appears to me the facts are very close to the case at issue.

"I might say, gentlemen, that I am constrained at this time to agree with counsel for the defendants, and it must be borne in mind that where the plaintiff seeks specific performance in accordance with the allegations of the bill, you must also agree that specific performance is not a matter of right, but always lies in the sound discretion of the trial court, and this court does not think that it would be doing justice to his oath to give the plaintiffs the relief that they seek, or any relief, as far as that is concerned, and so, therefore, I am constrained to hold that the plaintiffs did not make out grounds for relief in accordance with the allegations and, therefore, the bill of complaint should be and is hereby dismissed, with costs to be taxed by the defendants in favor of them against the plaintiffs."

This Court, of course, hears appeals in equity *de novo,* but we have frequently said that we give great weight to the findings of fact of the judge who heard the witnesses. *Hartka* v. *Hartka,* 346 Mich 453; *Blough* v. *Steffens,* 349 Mich 365.

A careful review of the testimony fails to convince this Court that plaintiff's testimony succeeded in establishing an oral contract for the making of a will and performance thereof on plaintiff's part. The testimony relied upon by plaintiff is consistent

with good intentions on the part of decedent toward plaintiff and his wife, but it does not necessarily represent evidence of a definite and binding agreement. The proffered testimony concerning an attempt to reduce the claimed contract to writing which was rejected by Mrs. Holms, in our view weakens rather than strengthens plaintiff's case.

Justice SMITH, in a recent case involving a somewhat similar problem, said:

"We agree with the appellant that the law must scrutinize closely and with great caution oral contracts to leave to another, upon the promisor's death, the estate of the latter." *Applebaum* v. *Wechsler,* 350 Mich 636, 642.

In an older case, likewise involving enforcement of an oral agreement to leave property, Justice POTTER said:

"Specific performance is not a matter of course but rests in the sound judgment and discretion of the court under all the circumstances of each particular case. Such discretion is not arbitrary and capricious but regulated by well-settled principles. The contract or agreement sought to be enforced must be mutual and the tie reciprocal. It must be certain in all essential particulars. There must be acts of part performance, unequivocally referring to and resulting from the agreement." *Woods* v. *Johnson,* 266 Mich 172, 174.

As to the first question posed, we cannot say that the chancellor abused his discretion by finding insufficient evidence of a binding agreement and dismissing this bill.

It should be noted also that the chancellor's opinion cites a 69 ALR case which we assume to be *Andrews* v. *Aikens,* 44 Idaho 797 (260 P 423, 69 ALR 8).

The 1st, 4th and 5th ALR headnotes summarizing the holding of this case bear quotation:

"1. Specific performance of a contract to execute a will in consideration of services rendered will be decreed only in the absence of a remedy at law, and will be denied if pecuniary compensation can be had for the breach.

"4. Specific performance of an oral contract to devise real estate in consideration of services rendered will not be enforced where the services consisted merely of looking after the business of the promisor without any close, intimate, or filial relationship existing between the parties, and the property has no peculiar sentimental or ancestral value to the promisee, who has made no improvements upon it.

"5. To warrant specific performance of a contract to devise real estate in consideration of services rendered, the proof must be clear, cogent, and convincing, and the testimony must be that of disinterested witnesses." 69 ALR 8.

See, also, annotations 69 ALR 14; 106 ALR 742.

This Court has recently dealt with 2 oral agreements where specific performance was granted over objections based on the statute of frauds. *Applebaum* v. *Wechsler, supra; Betterly* v. *Granger,* 350 Mich 651.

Three differences from our instant case should, however, be noted in the cited cases:

(1) In each, this Court affirmed a decree entered by a circuit court after a hearing wherein a chancellor found evidence warranting relief, which was "clear, cogent, and convincing" to him;

(2) In each, there was a close and intimate relationship between promisors and promisees;

(3) In each, the services rendered to the deceased were of a highly personal nature and compensation

for them could not have been computed in an action at law.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.